## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **MARITZA ORTIZ-SANCHEZ,** *et al.,*<br>Plaintiffs,<br><br>v.<br><br>**SIGFRIDO STEIDEL-FIGUEROA,** *et al.*,<br>Defendants. | Civil No. 21-1433 (MAJ/BJM) |

## <u>REPORT & RECOMMENDATION</u>

Maritza Ortiz-Sanchez ("Ortiz-Sanchez"), acting on behalf of herself and her minor child, Jane Doe 1 ("Jane Doe") (collectively "Plaintiffs"), sued Sigfrido Steidel-Figueroa ("Steidel-Figueroa"), Damaris Colon ("Colon"), Rowina Rosa-Pimentel ("Rosa-Pimentel"), Anabel Caraballo ("Caraballo"), Marta Villares ("Villares"), their spouses, and their respective conjugal partnerships under 42 U.S.C. § 1983 for violating Plaintiffs' Fourth, Fifth, Ninth, and Fourteenth Amendment rights. Docket No. ("Dkt.") 11. Ortiz-Sanchez also brought supplemental claims under Puerto Rico Civil Code Article 1802 ("Article 1802"), 31 L.P.R.A. § 5141, and 1803 ("Article 1803"), 31 L.P.R.A. § 5142. *Id.* ¶ 33. Rosa-Pimentel, Steidel-Figueroa, and Villares (collectively "Defendants") moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction, failure to state a claim upon which relief can be granted, absolute immunity, and qualified immunity. Dkts. 32, 41, 42. Plaintiffs opposed Rosa-Pimentel's motion, Dkt. 38, and did not respond to Steidel-Figueroa or Villares's motions. Defendants' motions were referred to me for a report and recommendation. Dkt. 84.

For the reasons set forth below, I recommend their motions to dismiss be **GRANTED**.

## APPLICABLE LEGAL STANDARDS

Defendants moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). "Motions brought under Rule 12(b)(1) and Rule 12(b)(6) are subject to the same standard of review." *Hart v. Mazur*, 903 F. Supp. 277, 279 (D.R.I. 1995).

Rule 12(b)(1) governs motions to dismiss for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The "party invoking the jurisdiction of a federal court carries the burden of proving its existence." *P.R. Tel. Co. v. Telecomm's Reg. Bd. of P.R.*, 189 F.3d 1, 7 (1st Cir. 1999). When deciding whether subject-matter jurisdiction exists, the court follows two general rubrics: (1) when a defendant challenges the legal sufficiency of the facts alleged, the court credits plaintiffs' factual allegations and draws reasonable inferences in his or her favor; and (2) when the defendant challenges the truth of facts alleged by the plaintiff and offers contrary evidence, the court weighs the evidence. *Valentín v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001). "While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion." *Gonzalez v. United States*, 284 F.3d 281, 288 (1st Cir. 2002).

When faced with a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the court "accept[s] as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences therefrom in the pleader's favor" to determine if the complaint states a claim for which relief can in fact be granted. *Santiago v. Puerto Rico*, 655 F.3d 61, 72 (1st Cir. 2011). The court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the countercomplaint, matters of public record, and facts susceptible to judicial notice." *Starr Surplus Lines Ins. Co. v. Mountaire Farms Inc.*, 920 F.3d 111, 114 (1st Cir. 2019) (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011))

(internal quotations omitted). In undertaking this review, the court must first "'isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements[,]' then 'take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief.'" *Zell v. Ricci*, 957 F.3d 1, 7 (1st Cir. 2020) (alteration in original) (quoting *Zenón v. Guzmán*, 924 F.3d 611, 615–16 (1st Cir. 2019)). "Plausible . . . means something more than merely possible," and gauging the plausibility of a claim for relief is "a 'context-specific' job" that requires drawing on "'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

## BACKGROUND

The following facts are drawn from the amended complaint. Dkt. 11. Where there are legitimate conflicts apparent in the record regarding factual assertions, I have noted these conflicts. Plaintiffs have frequently mixed legal assertions with factual assertions in their filings; I have considered the intermingled factual assertions where possible, but I have excised conclusory legal assertions from this section. *See, e.g., Papasan v. Allain*, 478 U.S. 265, 286 (1986) (when considering a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

The facts giving rise to this case began when Puerto Rico officials removed Jane Doe from Ortiz-Sanchez's custody. Dkt. 11 at 2. After Puerto Rico courts upheld that decision, Ortiz-Sanchez sued a different set of defendants under 42 U.S.C. § 1983 for violating her Fourth, Fifth, Ninth, and Fourteenth Amendment rights and this court dismissed those claims along with supplemental claims brought under Puerto Rico's Constitution and Article 1802. *See Ortiz v.*

*Jimenez-Sanchez*, 98 F. Supp. 3d 357, 372 (D.P.R. 2015); Amended Complaint, *Ortiz v. Jimenez-Sanchez*, No. 13-1475-SEC (D.P.R. Jun. 19, 2013), ECF No. 6.

Now, Ortiz-Sanchez alleges Rosa-Pimentel, Steidel-Figueroa, Villares, and others violated those same rights, again seeks damages under Article 1802, and seeks damages under Article 1803. Dkt. 11 at 1. She alleges Rosa-Pimentel, a court-appointed psychologist, (1) refused to provide a copy of her medical folder; (2) "switch[ed] hats or rolls . . . at her will"; (3) performed a job unrelated to her role providing therapeutic visitation therapy to Ortiz-Sanchez and Doe; and (4) overcharged Ortiz-Sanchez for medical bills. Dkt. 11 ¶ 24.

Ortiz-Sanchez alleges Steidel-Figueroa, the Director of the San Juan state court Administration Office (known by the Spanish acronym, "OAT"), failed to properly train, supervise, evaluate, and discipline employees at the OAT. *Id.* ¶ 15. She further alleges he refused to meet with her to discuss her concerns and failed to guarantee treatment by her preferred doctors. *Id.* ¶¶ 17–18. Additionally, she contends Steidel-Figueroa maliciously failed to prevent Jane Doe from developing parental alienation syndrome and refused to provide information regarding Jane Doe. *Id.* ¶¶ 19–20. Further, she asserts Steidel-Figueroa inadequately monitored work performed by Rosa-Pimentel, Villares, and others in the court's social work unit. *Id.* ¶ 21. Lastly, Ortiz-Sanchez alleges Steidel-Figueroa refused to send a certified letter acknowledging the allegedly improper conduct of Leilani Torres Roca and refused to acknowledge a stamped affidavit pertaining to an administrative complaint filed against Lirio González. *Id.* ¶ 22.

Ortiz-Sanchez alleges Villares, a court-appointed guardian ad litem, inappropriately called Jane Doe during her eighth-grade class seeking to influence her behavior and Ortiz-Sanchez's testimony. *Id.* ¶ 26. Further, she alleges Villares called Doe while Ortiz-Sanchez was testifying in an unspecified case to discover ways to damage the latter's credibility. *Id.* Next, she charges that

Villares planned an "ex-parte meeting" to perpetuate further witness tampering and emotional abuse against Jane Doe, sought to have Jane Doe visit her office, and held at least one closed-door meeting with a recused judge. *Id.* ¶ 27. Additionally, she alleges Villares opposes granting her access to an unspecified recorded interview. *Id.* ¶ 28. Ortiz-Sanchez also accuses Villares of inaccurately saying she was unsure why Doe's constitutional visitation rights were not being respected. *Id.* ¶ 29. Further, Ortiz-Sanchez contends Villares described the denial of Ortiz-Sanchez's Christmas visit with Jane Doe as "priceless!" in a public Facebook post. *Id.* ¶ 30. Finally, Ortiz-Sanchez alleges Villares overcharged her for services she did not accept or agree to receive and deviated from "accepted community standards of practice." *Id.* ¶ 31. Villares responds that Ortiz-Sanchez mischaracterized these events or fabricated them entirely. Dkt. 42 at 9.

## DISCUSSION

### I.    Rule 12(b)(1)

"Dismissal for lack of subject-matter jurisdiction because of the inadequacy of the federal claim is proper only when the claim is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Oneida Indian Nation of N.Y. v. County of Oneida*, 414 U.S. 661, 666 (1974)).

As mentioned, this court previously dismissed a strikingly similar Section 1983 claim in which Ortiz-Sanchez alleged a different set of defendants violated her Fourth, Fifth, Ninth, and Fourteenth Amendment rights following Jane Doe's removal from her custody. *See Ortiz*, 98 F. Supp. 3d at 362. Accordingly, Steidel-Figueroa argues Ortiz-Sanchez's claims against him are barred by res judicata. Dkt. 41 at 16–17. Villares moved to join that argument. *See* Dkt. 42 at 11; Fed. R. Civ. P. 12(g) ("A motion under this rule may be joined with any other motion allowed by

this rule."). Because Rosa-Pimentel did not raise this issue, I will only analyze res judicata with respect to Steidel-Figueroa and Villares. *See United States v. Metro. St. Louis Sewer Dist. (MSD)*, 952 F.2d 1040, 1043 (8th Cir. 1992) (finding a party waived any res judicata defense by failing to assert it and that third parties could not assert the defense on another's behalf).

"Res judicata is an affirmative defense, but where, as here, the defendant[s] ha[ve] raised the question on a motion to dismiss, the plaintiff[s] do[ ] not object to the procedure, and the court discerns no prejudice, the issue may be resolved on such a motion." *In re Sonus Networks, Inc.*, 499 F.3d 47, 56 (1st Cir. 2007) (citing *Rodriguez v. Baldrich*, 628 F.2d 691, 692 n.2 (1st Cir. 1980)). "Where a motion to dismiss is premised on res judicata, [courts] may take into account, in addition to the well-pleaded facts in the complaint, the record in the original action." *Medina-Padilla v. U.S. Aviation Underwriters, Inc.*, 815 F.3d 83, 85–86 (1st Cir. 2016) (citing *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008)).

> "Res judicata" is the term traditionally used to describe two discrete effects: (1) what we now call claim preclusion (a valid final adjudication of a claim precludes a second action on that claim or any part of it); . . . and (2) issue preclusion, long called "collateral estoppel" (an issue of fact or law, actually litigated and resolved by a valid final judgment, binds the parties in a subsequent action, whether on the same or a different claim).

*Baker by Thomas v. Gen. Motors Corp.*, 522 U.S. 222, 233 (1998) (citing Restatement (Second) of Judgments §§ 17–19 (1982)). Steidel-Figueroa and Villares appear to believe both concepts bar Ortiz-Sanchez's claims against them. Dkt. 41 at 17; Dkt. 42 at 11. I begin with claim preclusion.

### A. Claim Preclusion

Though Steidel-Figueroa looks to Puerto Rico's res judicata provision when making his argument, "[f]ederal claim preclusion law applies to determine the preclusive effect to be given a prior federal court judgment." *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 14 (1st Cir. 2010). Claims are precluded where "(1) the earlier suit resulted in a final judgment on the merits, (2) the

causes of action asserted in the earlier and later suits are sufficiently identical or related, and (3) the parties in the two suits are sufficiently identical or closely related." *Id.* Because this court decided Ortiz-Sanchez's prior claims at the summary judgment stage, the first prong is satisfied. *See Maher v. GSI Lumonics, Inc.*, 433 F.3d 123, 127 (1st Cir. 2005) (describing prior summary judgment as the "traditional basis for the operation of res judicata").

The second prong "boils down to whether the causes of action arise out of a common nucleus of operative facts." *Mass. Sch. of Law at Andover, Inc. v. Am. Bar. Ass'n*, 142 F.3d 26, 38 (1st Cir. 1998). Courts examine factors such as "whether the facts are related in time, space, origin or motivation," "whether they form a convenient trial unit," and whether treating them as a unit "conforms to the parties' expectations." *In re Iannochino*, 242 F.3d 36, 46 (1st Cir. 2001) (quoting Restatement (Second) of Judgments § 24 (1982)) (internal quotation marks omitted).

After losing custody of Jane Doe in 2012, Ortiz-Sanchez sued Puerto Rico officials in 2013. *See* Amended Complaint, *Ortiz v. Jimenez-Sanchez*, No. 13-1475-SEC (D.P.R. Jun. 19, 2013), ECF No. 6. This court granted summary judgment in 2015. *Ortiz*, 98 F. Supp. 3d at 362. Here, Ortiz-Sanchez alleges Steidel-Figueroa began engaging in the complained-of behavior in 2012. Dkt. 11 ¶ 20. However, her allegations against Villares all occurred from 2020 to 2021. *Id.* ¶¶ 26–31. Because Ortiz-Sanchez's claims against Villares did not arise until several years after the end of her prior lawsuit, they are not subject to claim preclusion. *See Mass. Sch. of Law at Andover, Inc.* 142 F.3d at 38 ("[R]es judicata will not attach if the claim asserted in the second suit could not have been asserted in the first.").

Plaintiffs' claims against Steidel-Figueroa arise entirely out of his work as the Director for the OAT at the Puerto Rico Court of First Instance in San Juan relating to the removal of Jane Doe. Dkt. 11 ¶¶ 15, 17–22. Plaintiffs previously sued the Judge who presided over Jane Doe's court-

ordered removal and a court-appointed "Family Relations Solicitor," which is a type of child representative or guardian ad litem. *See Ortiz*, 98 F. Supp. 3d at 369–70. It is unclear why Ortiz-Sanchez did not bring this claim in her original lawsuit. However, it is also unclear when she learned of Steidel-Figueroa's allegedly wrongful conduct. Because there are numerous other problems with Ortiz-Sanchez's claims, I will assume she learned of his conduct after the judgment in her previous claim and thus could not have included these claims in her prior lawsuit. Accordingly, I recommend finding her claims against Steidel-Figueroa and Villares are not barred by claim preclusion.

## B. Issue Preclusion

"In order to effectuate the public policy in favor of minimizing redundant litigation, issue preclusion bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties." *Kaspar Wire Works*, 575 F.2d at 535–36. Though Ortiz-Sanchez was undoubtedly a party to her first claim, none of the defendants in this action were defendants in Ortiz-Sanchez's prior lawsuit. However, "the [Supreme] Court has eliminated the requirement of mutuality in applying collateral estoppel to bar relitigation of issues decided earlier in federal-court suits." *Allen v. McCurry*, 449 U.S. 90, 94–95 (1980) (citing *Blonder–Tongue Laboratories, Inc. v. Univ. of Ill. Found.*, 402 U.S. 313 (1971)). Thus, a litigant who was not a party to a previous federal case can assert issue preclusion defensively "to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979). Accordingly, if Ortiz-Sanchez's claims in her first action were actually adjudicated and essential to the judgment, Steidel-Figueroa and Villares may successfully assert issue preclusion.

When evaluating whether an issue is precluded by a previous decision, courts consider the following elements:

> (1) an identity of issues (that is, that the issue sought to be precluded is the same as that which was involved in the prior proceeding), (2) actuality of litigation (that is, that the point was actually litigated in the earlier proceeding), (3) finality of the earlier resolution (that is, that the issue was determined by a valid and binding final judgment or order), and (4) the centrality of the adjudication (that is, that the determination of the issue in the prior proceeding was essential to the final judgment or order).

*Gonzalez-Pina v. Rodriguez*, 407 F.3d 425, 430 (1st Cir. 2005) (quoting *Faigin v. Kelly*, 184 F.3d 67, 78 (1st Cir. 1999)).

### 1. Fourth, Fifth and Ninth Amendment Violations

First, like her previous action, Ortiz-Sanchez brought this Section 1983 claim for violations of her Fourth, Fifth, Ninth, and Fourteenth Amendment rights in connection with Jane Doe's removal from her custody. Dkt. 11 at 2–3. And, as in her previous action, she also brought supplemental claims for damages resulting from these violations under Puerto Rico's general tort statutes, known as Article 1802 and 1803. *Id.* at 17.

This court previously dismissed Ortiz-Sanchez's Fourth, Fifth, and Ninth Amendment claims against Puerto Rico officials after describing the latter two as "patently frivolous." *Ortiz*, 98 F. Supp. 3d at 367. It found her Fourth Amendment claims failed because, assuming Jane Doe's removal from Ortiz-Sanchez's home constituted a seizure, that seizure occurred pursuant to a valid court order and was thus constitutionally reasonable. *Id.* Further, it dismissed Ortiz-Sanchez's Fifth Amendment claims because her "amended complaint contain[ed] no allegations that any of the defendants [were] federal actors." *Id.* Additionally, it dismissed her Ninth Amendment claims after observing that Constitutional provision "does not create substantive rights beyond those conferred by governing law."

Ortiz-Sanchez's new complaint offers little detail as to the basis of each constitutional claim. However, it seeks redress against the defendants for their role in the removal of Jane Doe from Ortiz-Sanchez's care. Dkt. 11 at 2. And it identifies Defendants as officials of the Commonwealth of Puerto Rico. *Id.* This court previously decided that Jane Doe's removal was constitutionally reasonable. It further admonished Ortiz-Sanchez that Fifth Amendment claims could only be brought against federal actors, not Puerto Rico officials. And it explained that the Ninth Amendment standing alone was not a viable basis for her claims. Thus, Ortiz-Sanchez is barred from again challenging Jane Doe's removal under the Fourth Amendment and from asserting claims against Puerto Rico officials involved in Jane Doe's case under the Fifth and Ninth Amendments. Accordingly, Steidel-Figueroa and Villares's motions to dismiss Ortiz-Sanchez's Fourth, Fifth, and Ninth Amendment claims should be **GRANTED** and those claims should be **DISMISSED with prejudice**.

### 2.  Fourteenth Amendment

As in her previous complaint, Ortiz-Sanchez's Fourteenth Amendment claims are "the heart of this action." *Ortiz*, 98 F. Supp. 3d at 368. She first alleges Steidel-Figueroa failed to properly train, supervise, or evaluate and discipline all employees and agents involved in Jane Doe's removal. Dkt. 11 at 8 ¶¶ 14, 15. She further alleges Steidel-Figueroa failed to guarantee "true treatment" for Jane Doe, failed to investigate and protect her, and "maliciously" failed to refer her to "some degree of reasonable treatment to stop Parental Alienation Syndrome." *Id.* at 9 ¶¶ 18–20. Additionally, she alleges he inadequately monitored work performed by Rosa-Pimentel, Villares, and others in the court's social work unit, and failed to provide her with documents. *Id.* ¶¶ 21–22. None of these claims were addressed in Ortiz-Sanchez's prior lawsuit. Though this court resolved that lawsuit finding a judge was entitled to judicial immunity while a court-appointed

guardian ad litem and a social worker were entitled to absolute quasi-judicial immunity, it did not address whether that doctrine applied to court administrators and supervisors like Steidel-Figueroa. Accordingly, Ortiz-Sanchez's claims against him are not subject to issue preclusion based on the previous lawsuit resolved in this court.

Ortiz-Sanchez alleges Villares behaved improperly during her appointment as Jane Doe's court-appointed attorney or guardian ad litem. Dkt. 11 at 13. As this court held when Ortiz-Sanchez sued Jane Doe's previous guardian ad litem, an attorney "asked by the court to advise on what disposition will serve the best interests of a child in a custody proceeding need [sic] absolute immunity in order to be able to fulfill her obligations without the worry of intimidation and harassment from dissatisfied parents." *Ortiz*, 98 F. Supp. 3d at 370 (citing *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009)) ("So Lugo, as [Jane Doe]'s guardian, deserves protection from harassment by disenchanted litigants like Ortiz."). Because this court previously found a guardian ad litem was entitled to absolute quasi-judicial immunity, Ortiz-Sanchez is barred from asserting claims against Villares for her role as Jane Doe's guardian ad litem. Accordingly, Villares's motion to dismiss Ortiz-Sanchez's claims against her should be **GRANTED** and those claims should be **DISMISSED with prejudice**.

### 3.  Supplemental Claims

Ortiz-Sanchez also brought Article 1802 claims in her previous lawsuit. *See* Amended Complaint, *Ortiz v. Jimenez-Sanchez*, No. 13-1475-SEC (D.P.R. Jun. 19, 2013), ECF No. 6 at 28. She did not bring claims under Article 1803. Though this court also dismissed her Article 1802 claims at summary judgment, it dismissed those claims without prejudice after declining to exercise pendant jurisdiction because neither party had briefed complex Puerto Rico legal issues. *Ortiz*, 98 F. Supp. 3d at 372. A decision declining to exercise supplemental jurisdiction over state-

law claims joined with federal-question claims and dismissing the state-law claims without prejudice is not a judgment on the merits and does not support res judicata. *See Audette v. Int'l Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1111 n.1 (9th Cir. 1999)). Accordingly, this court's prior dismissal of Ortiz-Sanchez's Puerto Rico claims without prejudice has no preclusive effect over Ortiz-Sanchez's current Puerto Rico state law claims.

### C. Full Faith and Credit

I note that Steidel-Figueroa and Villares also argue they are entitled to dismissal under the full faith and credit statute. Dkts. 41 at 16; 42 at 7. "Under [that] statute, 28 U.S.C. § 1738, a state court judgment is entitled to the same preclusive effect in federal court as it would be given in the state in which it was rendered." *Garcia-Monagas v. De Arellano*, 674 F.3d 45, 50 (1st Cir. 2012) (citing *In re Sonus Networks, Inc.*, 499 F.3d at 56); *see also Boateng v. InterAmerican Univ., Inc.*, 210 F.3d 56, 61 (1st Cir. 2000) (noting that "Puerto Rico is, for this purpose, the functional equivalent of a state") (citing *Cruz v. Melecio*, 204 F.3d 14, 18 n. 2 (1st Cir. 2000)). However, in making his argument Steidel-Figueroa repeatedly cites to this court's previous decision, Dkt. 41 at 15–16, while Villares alludes to unspecified Puerto Rico Supreme Court decisions. 42 at 7. The full faith and credit statute plainly applies to state, not federal, court decisions. Nevertheless, the preclusive effect of this court's previous decision was discussed above. As for the unspecified Puerto Rico Supreme Court decisions Villares mentioned, I decline to scour that court's records and guess as to which decision(s) Villares references. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("Judges are not expected to be mindreaders. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly.'"). Moreover, I already recommended dismissing Ortiz-Sanchez's claims against Villares.

## II.      Rule 12(b)(6)

This leaves Ortiz-Sanchez with all her claims against Rosa-Pimentel and her Fourteenth amendment and supplemental state law claims against Steidel-Figueroa. I begin with her remaining federal claims.

### A.  Federal Claims

### 1.  Rosa-Pimentel

Ortiz-Sanchez's Fourth Amendment claim against Rosa-Pimentel should be dismissed because she has not identified a seizure in which Rosa-Pimentel participated. Instead, she alleged Rosa-Pimentel (1) refused to provide a copy of her medical folder; (2) "switch[ed] hats or rolls . . . at her will"; (3) performed a job unrelated to her role providing therapeutic visitation therapy to Ortiz-Sanchez and Doe; and (4) charged Ortiz-Sanchez fraudulent copayments and overcharged her for medical bills. Dkt. 11 ¶ 24.

None of these allegations come close to constituting a Fourth Amendment seizure. Ortiz-Sanchez has not identified a right under the Fourth Amendment, or any other constitutional provision, entitling her to inspect medical records. *See Mallgren v. Burkholder*, 52 F. Supp. 3d 490, 496 (E.D.N.Y. 2014) (noting plaintiff failed to identify constitutional right to inspect medical records and finding the complaint failed to state a constitutional claim). Vague allegations that Rosa-Pimentel did not perform her job adequately plainly do not constitute a seizure. And allegations that Rosa-Pimentel overcharged Ortiz-Sanchez do not amount to allegations of an unconstitutional seizure of property. *See Tower v. Leslie-Brown*, 326 F.3d 290, 297 (1st Cir. 2003) ("A 'seizure' of property occurs when there is some meaningful interference with an individual's possessory interests in that property.") (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Ortiz-Sanchez did not even claim she paid Rosa-Pimentel's alleged overcharges, much

less that Rosa-Pimentel seized her funds. Accordingly, she has failed to state a Fourth Amendment claim against Rosa-Pimentel.

Ortiz-Sanchez's Fifth and Ninth Amendment claims against Rosa-Pimentel should be dismissed for the same deficiencies discussed above. Her Fifth Amendment claim fails because she never alleged Rosa-Pimentel is a federal actor. *See Martínez–Rivera v. Sánchez Ramos*, 498 F.3d 3, 8 (1st Cir. 2007) (affirming dismissal of Fifth Amendment claims because police officers are state, not federal, actors). And her Ninth Amendment claim fails because that amendment "does not create substantive rights beyond those conferred by governing law." *Vega–Rodríguez v. Puerto Rico Tel. Co.*, 110 F.3d 174, 182 (1st Cir. 1997); *accord Froehlich v. State, Dep't of Corr.*, 196 F.3d 800, 801 (7th Cir. 1999) (Posner, J.). This authority also provides an additional basis for dismissing these claims with respect to Steidel-Figueroa and Villares.

Oritz-Sanchez's Fourteenth Amendment claims against Rosa-Pimentel should also be dismissed. As discussed, she identified no constitutional right to access her medical records. She also failed to state how Rosa-Pimentel's allegedly deficient job performance interfered with her constitutional right to life, liberty or property. *See* U.S. Const. amend. XIV. Ortiz-Sanchez's opposition to Rosa-Pimentel's motion to dismiss states Jane Doe was removed from her custody in 2012 and that she did not begin working with Rosa-Pimentel until 2019. Dkt. 38-1 at 10, 26. And, she did not allege that Rosa-Pimentel's alleged overcharges deprived her of property. *See id.* The complaint does allege Rosa-Pimentel failed to meet a duty of care and deviated from accepted standards of practice. Dkt. 11 ¶¶ 24, 36–37. However, "[s]ection 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." *Baker v. McCollan*, 443 U.S. 137, 146 (1979). Thus, Ortiz-Sanchez's Fourteenth

Amendment claim against Rosa-Pimentel should be dismissed. Accordingly, Rosa-Pimentel's motion to dismiss Ortiz-Sanchez's entire Section 1983 claim should be **GRANTED** and that claim should be **DISMISSED with prejudice**.

### 2. Steidel-Figueroa

Ortiz-Sanchez alleges Steidel-Figueroa failed to properly train, supervise, evaluate, and discipline employees at the OAT, refused to meet with her to discuss the inadequate supervision, and failed to guarantee treatment by her preferred doctors. Dkt. 11 ¶¶ 15, 17–18. Additionally, she contends he maliciously failed to prevent Jane Doe from developing parental alienation syndrome and refused to provide information about her. *Id.* ¶¶ 19–20. Further, Ortiz-Sanchez asserts Steidel-Figueroa inadequately monitored work performed by Rosa-Pimentel, Villares, and others in the court's social work unit. *Id.* ¶ 21. Lastly, she alleges he refused to send a certified letter acknowledging the allegedly improper conduct of Leilani Torres Roca and refused to acknowledge a stamped affidavit pertaining to an administrative complaint filed against Lirio González. *Id.* ¶ 22.

In a Section 1983 claim, "[s]upervisory liability may not be predicated upon a theory of respondeat superior." *Febus-Rodriguez v. Betancourt-Lebron*, 14 F.3d 87, 91 (1st Cir. 1994) (citing *Gutiérrez–Rodríguez v. Cartagena*, 882 F.2d 553, 562 (1st Cir. 1989)). "[M]erely alleging that a supervisor failed to train his subordinates is patently insufficient to establish a § 1983 claim against the supervisor." *Figueroa-Flores v. Acevedo-Vila*, 491 F. Supp. 2d 214, 226 (D.P.R. 2007). "Moreover, a supervisor cannot be liable for merely negligent acts. Rather, a supervisor's acts or omissions must amount to a reckless or callous indifference to the constitutional rights of others." *Febus-Rodriguez*, 14 F.3d at 92. "An official displays such reckless or callous indifference when

it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights." *Id.* (quoting *Germany v. Vance*, 868 F.2d 9, 18 (1st Cir. 1989)).

Accordingly, Ortiz-Sanchez's Fourteenth Amendment claim against Steidel-Figueroa should be dismissed. Her failure to supervise allegations are plainly insufficient. Her assertions that Steidel-Figueroa failed to guarantee "true" treatment with her preferred doctors and failed to prevent Jane Doe from developing parental alienation syndrome are completely unsupported by any explanation. Though courts evaluating a motion to dismiss must accept as true all well-pleaded facts and indulge all reasonable inferences in the plaintiff's favor, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996). Lastly, Ortiz-Sanchez fails to explain how Steidel-Figueroa exhibited a reckless or callous indifference to her constitutional rights by allegedly refusing to provide information about Jane Doe, send a letter, and acknowledge receipt of a document. Accordingly, Ortiz-Sanchez's Fourteenth Amendment claim against Steidel-Figueroa should be dismissed.

### 3. Villares

As discussed, I recommend finding Villares is entitled to absolute quasi-judicial immunity in her role as a court-appointed guardian ad litem. However, even assuming she were not, Ortiz-Sanchez's claims against her should still be dismissed. Ortiz-Sanchez alleges Villares called Jane Doe to perpetuate emotional abuse and witness tampering, met with a recused judge, refused Ortiz-Sanchez access to a recorded interview, inappropriately discussed Ortiz-Sanchez's situation in a public Facebook post, and deviated from accepted standards of care. Dkt. 11 ¶¶ 26–31. I note that Villares strongly denies these allegations. Dkt. 42 at 9–11.

However, these allegations fail to raise a constitutional claim. The court will not credit Ortiz-Sanchez's conclusory allegation that Villares called Jane Doe to engage in witness tampering

and emotional abuse with the aim of influencing her testimony. *See Zell*, 957 F.3d at 7 (explaining that courts must ignore conclusory statements). Further, though Ortiz-Sanchez alleges Villares secretly met with a recused judge, she does not explain, and it is not clear, how such a meeting interfered with Ortiz-Sanchez's constitutional rights. *See* Dkt. 11 ¶ 27; *Zannino*, 895 F.2d at 17. And though Ortiz-Sanchez alleges Villares violated her due process rights by denying her access to a secret, recorded interview, she offers no details establishing or even implying any constitutional right to access this recording. Next, I address Ortiz-Sanchez's allegation that Villares described a decision to deny her a Christmas visit with Jane Doe as "priceless!" in a public Facebook post. Dkt. 11 ¶ 30. Assuming the truth of this claim, that behavior was highly insensitive and unprofessional, not unconstitutional. At best, it might be characterized as an action displaying a deliberate indifference to Jane Doe's wellbeing. *See Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 172–73 (4th Cir. 2010) (collecting cases finding due process right of foster children to be free from harm and evaluating claims under a deliberate indifference standard). However, assuming this harmed Jane Doe, Ortiz-Sanchez's opposition states Jane Doe lives with her father, not in foster care. Dkt. 38-1 at 2, 34. This forecloses a deliberate indifference claim. *See Doe ex rel. Johnson*, 597 F.3d at 174 ("[T]he transfer of custody [from one family member to another] did not make the State 'the permanent guarantor' of [the child's] safety."). Lastly, as discussed, violating a duty of care does not amount to a constitutional deprivation. Accordingly, even if Villares did not have absolute quasi-judicial immunity, Ortiz-Sanchez's Section 1983 claims against her should nevertheless be dismissed because they fail to state a constitutional violation.

### B.  Immunity

In addition to Villares, Rosa-Pimentel and Steidel-Figueroa also argued they are entitled to either absolute or qualified immunity. I agree. Because I already recommended finding Villares was entitled to absolute quasi-judicial immunity, I only discuss Rosa-Pimentel and Steidel-Figueroa here.

#### 1.  Rosa-Pimentel

Rosa-Pimentel was a court-appointed psychologist who provided treatment to Ortiz-Sanchez and Jane Doe. Dkt. 11 at 5 ¶ 7–8. Such mental health professionals are entitled to absolute quasi-judicial immunity when acting at the court's direction. *See Crane v. Hudson*, 2019 WL 5290538, at *4 (S.D.W. Va. Sept. 23, 2019) (collecting cases), *report and recommendation adopted*, 2019 WL 5268683 (S.D.W. Va. Oct. 17, 2019). Notably, when a parent brought a Section 1983 claim against a court-appointed psychologist assigned to reevaluate the custody order of the parent's minor children, the Tenth Circuit affirmed dismissal of the claim in part because the psychologist had absolute quasi-judicial immunity. *Martinez v. Roth*, 53 F.3d 342 (Table) (10th Cir. 1995). Because she performed the same task, Rosa-Pimentel is entitled to this same immunity. I note that Ortiz-Sanchez alleges Rosa-Pimentel deviated from her assigned role at the direction of others. However, "allegations of malice, or bad faith or, as here, a claim of conspiracy will not defeat the protection of derivative absolute immunity for actions taken pursuant to court orders." *Cok v. Cosentino*, 876 F.2d 1, 3 (1st Cir. 1989). Accordingly, Rosa-Pimentel is entitled to absolute quasi-judicial immunity.

#### 2.  Steidel-Figueroa

As mentioned, Steidel-Figueroa is the Director of the San Juan state court Administration Office. As discussed above, Ortiz-Sanchez's failure to supervise claims are not viable under §

1983 and her claim Steidel-Figueroa failed to prevent Jane Doe from developing parental alienation syndrome is conclusory. Her remaining claims are that Steidel-Figueroa refused to send a certified letter and refused to acknowledge a stamped affidavit.

Judicial immunity extends to officers other than judges when they exercise discretionary judgment as part of their function. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 436–37 (1993). A state court clerk's failure to file documents or provide them to a litigant is generally considered ministerial, not discretionary. *See Maness v. Dist. Ct. of Logan Cnty.-N. Div.*, 495 F.3d 943, 944 (8th Cir. 2007) (clerk's refusal to submit litigant's application to a circuit judge was ministerial, not discretionary). However, court officials may still be entitled to qualified immunity. *See id.* (clerk protected).

"The qualified immunity doctrine provides defendant public officials an immunity from suit and not a mere defense to liability." *Maldonado v. Fontanes*, 568 F.3d 263, 268 (1st Cir. 2009). "A plaintiff may overcome qualified immunity by first making out the violation of a constitutional right, and second, establishing that the 'right was "clearly established" at the time of the defendant's alleged violation.'" *Decotiis v. Whittemore*, 635 F.3d 22, 36 (1st Cir. 2011) (quoting *Maldonado*, 568 F.3d at 268–69) (further citations omitted). "The clearly established step comprises two subparts: first, whether the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right, and second, whether in the specific context of the case, a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights." *Id.* (quotations and citations omitted). As discussed above, Ortiz-Sanchez has not explained how Steidel-Figueroa violated her constitutional rights when he refused to send a certified letter or acknowledge a stamped affidavit. Even assuming she did, she has not explained how Steidel-Figueroa's alleged actions prejudiced her. *See Johnson v.*

*Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006) ("To sustain [her] claim based on denial of access to . . . the court, [plaintiff] must prove that [s]he suffered an actual injury or prejudice as a result of the alleged denial of access.").

And even assuming she cleared that hurdle, Ortiz-Sanchez has not adequately alleged Steidel-Figueroa would have understood his conduct violated her clearly established constitutional rights. "[F]or the right to be clearly established, the plaintiff must point to controlling authority or a body of persuasive authority, existing at the time of the incident, that can be said to have provided the defendant with 'fair warning.'" *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 617 (1999)). Ortiz-Sanchez points to no such authority. Accordingly, she has failed to allege that Steidel-Figueroa violated a clearly established constitutional right. He is thus entitled to qualified immunity.

### C. *Rooker-Feldman* Doctrine

I also note that Ortiz-Sanchez apparently challenges the actions of state court officials who participated in removing Jane Doe from her custody. Dkt. 11 at 18 (characterizing decision as illegal). Steidel-Figueroa and Villares argue the *Rooker-Feldman* doctrine bars her from doing so. In dismissing Ortiz-Sanchez's previous lawsuit, Judge Casellas wrote, "the *Rooker–Feldman* doctrine . . . would bar this court from reviewing the question whether, in removing [Jane Doe]'s custody from Ortiz, the defendants violated the plaintiffs' rights." *Ortiz*, 98 F. Supp. 3d at 371 (citing *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415–16 (1923); *District of Columbia Ct. of App. v. Feldman*, 460 U.S. 462, 486 (1983)). As in that case, I "intentionally bypassed *Rooker–Feldman* to reach the merits, which, as should be plain by now, are easily resolvable against the plaintiffs." *Id.* n.9. Accordingly, to the extent Ortiz-Sanchez seeks to challenge the local court's custody decision, the *Rooker–Feldman* doctrine prevents her from doing so in this court. *Id.* at 371–72.

### D.  State Law Claims

Next, as mentioned, Ortiz-Sanchez also brought pendent claims under Puerto Rico Civil Code Articles 1802 and 1803. Dkt. 11 at 18. Citing the statute of limitations, her immunity, and Ortiz-Sanchez's vague allegations, Rosa-Pimentel moved for dismissal of the state law claims with prejudice. Dkt. 32 at 18–20. In the alternative, she moved for dismissal without prejudice. *Id.* at 21. Steidel-Figueroa likewise moved for dismissal without prejudice, Dkt. 41 at 17–18, while Villares did not address the state law claims.

When, as here, "a plaintiff's anchor claim is a federal cause of action and the court unfavorably disposes of the plaintiff's federal claim at the early stages of a suit, well before trial, the court generally dismisses any supplemental state-law claims without prejudice." *Ramos–Echevarría v. Pichis, Inc.*, 659 F.3d 182, 191 (1st Cir. 2011). But that general principle is not a "mandatory rule to be applied inflexibly in all cases," *Redondo Const. Corp. v. Izquierdo*, 662 F.3d 42, 49 (1st Cir. 2011) (citation omitted), as "[d]istrict court[s] must exercise 'informed discretion' when deciding whether to exercise supplemental jurisdiction over state law claims." *Id.* (quoting *Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 256–57 (1st Cir. 1996)).

In making this determination, courts consider a balance of factors, including, "judicial economy, convenience, fairness and comity." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7 (1988) (citing *United Mine Workers v. Gibbs,* 383 U.S. 715 726–27 (1966)); *see also Mercado–Garcia v. Ponce Fed. Bank*, 979 F.2d 890, 896 (1st Cir. 1992). These factors generally favor "relinquish[ing] jurisdiction when state issues predominate, whether in terms of proof, of the scope of the issues raised, or the comprehensiveness of the remedy sought." *Carnegie–Mellon*, 484 U.S. at 350 n. 7 (citing *Gibbs*, 383 U.S. at 726); *see also Fabregas v. ITT Intermedia, Inc.*, 13

F. Supp. 2d 225, 229 (D.P.R. 1998). Accordingly, these factors support declining to exercise supplemental jurisdiction here.

However, "[t]he running of the statute of limitations on a pendent claim, precluding the filing of a separate suit in state court, is a salient factor to be evaluated when deciding whether to retain supplemental jurisdiction." *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1177 (1st Cir. 1995). Puerto Rico's Civil Code provides that personal injury actions carry a one-year statute of limitations from the moment the aggrieved person has knowledge of the injury. 31 L.P.R.A. § 5298. However, that one-year term is subject to tolling. This may be accomplished, among other things "by the institution of an action before the courts." *Id.* § 5303. In Puerto Rico, "[o]nce the complaint is filed, the limitations period is tolled until the judicial proceedings have definitively concluded." *See Gonzalez Berrios v. Kmart of P.R., Inc.*, 2017 WL 5195217 at *2 (D.P.R. Nov. 8, 2017) (citing *Lopez-Gonzalez v. Mun. of Comerio*, 404 F.3d 548, 552 (1st Cir. 2005)) (further citations omitted). Dismissing the original action without prejudice causes the entire limitations period to run anew from the date the previous action came to a definite end. *Lopez-Gonzalez*, 404 F.3d at 552.

Because Ortiz-Sanchez's Article 1802 and 1803 claims are subject to a one-year statute of limitations, Rosa-Pimentel moves to dismiss them with prejudice. As discussed, Ortiz-Sanchez's claims against Rosa-Pimentel arise from the latter's work as a court-appointed therapist for Ortiz-Sanchez and Jane Doe. Rosa-Pimentel attached a certified translation of a San Juan Superior Court notification that she was released from her duty as a therapist in Ortiz-Sanchez's state case on January 23, 2020. *See* Dkt. 32-2; *U.S. ex rel. Winkelman v. CVS Caremark Corp.*, 827 F.3d 201, 208 (1st Cir. 2016) ("[E]ven within the Rule 12(b)(6) framework, a court may consider matters of public record and facts susceptible to judicial notice."). Rosa-Pimentel observed that Ortiz-

Sanchez filed this lawsuit on September 15, 2021. Accordingly, I recommend Rosa-Pimentel's motion to dismiss Ortiz-Sanchez's state law claims be **GRANTED** and those claims be **DISMISSED with prejudice**.

Steidel-Figueroa and Villares make no argument that Ortiz-Sanchez's state law claims should be dismissed with prejudice. Steidel-Figueroa expressly argues that the claims against him should be dismissed without prejudice because "comity will be better served by allowing the local courts to resolve such issues of local concern." Dkt. 41 at 18. After considering this and the factors discussed above, I recommend Steidel-Figueroa and Villares's motions to dismiss Ortiz-Sanchez's state law claims be **GRANTED** and those claims be **DISMISSED without prejudice**.

### E. Claims Against Conjugal Partnerships

Finally, I note that Ortiz-Sanchez sued each of Defendants' spouses and their conjugal partnerships. Dkt. 11 at 1. However, only Rosa-Pimentel moved to dismiss the claim against her husband and their conjugal partnership. Dkt. 32 at 21–22. Ortiz-Sanchez alleged no facts relating to Rosa-Pimentel's spouse or the liability of the couple's conjugal partnership besides her allegations against Rosa-Pimentel as an individual. Because I recommend dismissing those allegations, I fail to see how Ortiz-Sanchez has a claim against Rosa-Pimentel's conjugal partnership, much less against her spouse as an individual.

Moreover, "[u]nder Puerto Rico law, conjugal partnerships are not directly responsible for the payment of fines or pecuniary condemnations imposed against one of the spouses." *Velez-Acevedo v. Centro de Cancer de la Universidad de P.R.*, 2021 WL 2785496, at *10 (D.P.R. July 2, 2021) (citing 31 L.P.R.A. § 3663). As an exception, I note that "the conjugal legal partnership can be held responsible for torts committed by one spouse as long as the action that gave rise to the tort was for the benefit of the conjugal legal partnership." *CMI Cap. Mkt. Inv., LLC v.*

*Ortiz-Sanchez et al. v. Steidel-Figueroa et al.*, Civil. No. 21-1433 (MAJ/BJM)                    24

*Gonzalez-Toro*, 520 F.3d 58, 63 (1st Cir. 2008). However, Ortiz-Sanchez does not allege that Rosa-Pimentel benefited economically from her allegedly tortious behavior. And "just because the intentional acts reportedly occurred at the [Rosa-Pimentel]'s workplace, this does not mean that the conjugal partnerships are directly liable to Plaintiffs." *Velez-Acevedo*, 2021 WL 2785496, at *11. Accordingly, Rosa-Pimentel's motion to dismiss Ortiz-Sanchez's claims against her husband and their conjugal partnership should be **GRANTED** and those claims be **DISMISSED with prejudice**.

**CONCLUSION**

For the foregoing reasons, I recommend Defendants' motions to dismiss be **GRANTED**.

Ortiz-Sanchez's Section 1983 and supplemental state claims against Rosa-Pimentel, her spouse, and their conjugal partnership should be **DISMISSED with prejudice**.

Her Section 1983 claims against Steidel-Figueroa and Villares should also be **DISMISSED with prejudice.** Her supplemental state claims against these two defendants should be **DISMISSED without prejudice**.

This report and recommendation is filed pursuant to 28 U.S.C. 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within fourteen days of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 26th day of September 2023.

S/ *Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge